ANDERSON *v.* SILLS

No. 42008 November 6, 1961 134 So. 2d 482

240

*Roberts & Craig,* Oxford, for appellant.

*Sumners & Hickman,* Oxford; *Smallwood, Darden & Sumners,* New Albany, for appellee.

ETHRIDGE, J.

Appellant, Mrs. Vallie Anderson, instituted this suit in damages for personal injuries in the Circuit Court of Lafayette County, against appellee, William S. Sills. She appeals from a jury verdict for defendant Sills.

The accident occurred on a bridge about six miles north of Oxford on State Highway No. 7, around 3 P. M. on November 21, 1959. It was a clear, dry day. Plaintiff's husband, Melvin Anderson, was driving their car north on the highway, and plaintiff was sitting to his right. The highway at this point is about twenty feet in width, but the bridge, which is 132 feet 6 inches long, is narrower, being eighteen feet between the curbs.

Sills was driving a tractor-trailer combination for his employer, Ross Brown. Since the jury accepted his version of what happened, we outline principally his testimony. Defendant was driving south at about forty miles per hour and observed the Anderson car coming northward toward the bridge, as he was approaching it. He "checked up" his speed and continued toward the bridge. The truck and the Anderson car were in the process of passing one another on the bridge. When Anderson got even with the cab of the truck, he began sliding his brakes. Sills then observed another car behind his truck, attempting to overtake and pass him going south. It was a passenger car with six women in it, driven by Elvira Alexander. The Alexander car pulled out into its left lane of traffic attempting to pass

Sills, and collided head-on with the Anderson vehicle. Neither of the passenger cars came in physical contact with the tractor-trailer. In the process of passing the northbound Anderson car on the bridge, Sills slowed down his truck, but did not stop until after the Anderson and Alexander cars collided. When that occurred he stopped the truck on the south end of the bridge, got out and rendered assistance to those injured.

Sills had not noticed the Alexander car to his rear until immediately before the collision, although it had been following him for about half a mile. He stepped on the brakes lightly and started slowing down as he approached the bridge upon which he would pass the Anderson vehicle. The red stop lights on the back of the trailer were designed to light up when this was done.

The tractor-trailer had been inspected by mechanics sometime before and after this collision, and they were working at both times. A highway patrolman who arrived shortly after the accident saw no truck skid marks on the bridge. Sills said he did not slide or skid his wheels. He conceded Anderson was driving around 35-40 miles per hour and was operating his car in a careful manner. The bridge was wide enough for the Anderson car and the truck to pass one another going in opposite directions. The two passenger cars collided on the east side of the highway at a point near the front wheels of the trailer.

In short, defendant's evidence tended to show that he was driving the tractor-trailer in a careful manner and slowed down as he approached the bridge, in order to pass the oncoming Anderson car; that the Alexander car behind the truck suddenly pulled out into its left lane of traffic and crashed head-on into plaintiff; and that he did not suddenly slow down or stop until after the collision.

On the other hand, appellant's evidence tended to show that defendant stopped his truck suddenly and

without any signals; that the tail-lights on the trailer were not operating; a large amount of smoke arose from the wheels when the sudden stop occurred; this obscured the vision of Elvira Alexander and required her to pull out around the truck to avoid crashing into its rear; and that this sudden stop or near stop by Sills was the proximate cause of the collision between the Alexander and Anderson cars, which resulted in serious injury to Mrs. Anderson.

■■■ This is a typical case of conflicting evidence for the jury to decide. It manifestly accepted defendant's version of the occurrence, and there is substantial evidence to support the verdict. In short, the jury was warranted in finding that the sole proximate cause of the collision and plaintiff's injuries was the negligence of the driver of the Alexander car, and that defendant was guilty of no negligence contributing to the accident.

Appellant states that the trial court permitted an improper cross-examination of her husband, Melvin Anderson, concerning the contents of a statement about the accident which he had allegedly signed. Anderson testified as a witness for his wife. On cross-examination appellee's counsel asked him whether in January 1960 he signed a statement about the accident. He did not remember it. He was shown a signature at the bottom of the statement, and replied it looked like his signature. He was then cross-examined in some detail by defendant's counsel, who manifestly was reading from the statement, and was asked whether he denied that he said various things. When he was handed the statement, he said, "I still don't remember all of that", but it looked like his signature. Defendant offered the statement into evidence and objection was sustained to it. Appellant's counsel had no objection to the statement being marked for identification.

There was no error in this cross-examination. Since the statement was not properly authenticated, the trial

court correctly refused to admit it into evidence. However, defendant's attorney had the right to try to impeach the witness by cross-examination concerning a prior inconsistent statement. Mills v. State, 231 Miss. 641, 647-648, 97 So. 2d 386 (1957).

■■ ■ This document, not admitted in evidence, was not substantive evidence itself. It was restricted to cross-examination for purposes of impeachment. 58 Am. Jur., Witnesses, Secs. 798, 801, 803, 804, 767. A witness may be interrogated on cross-examination as to whether he made certain statements inconsistent with or contradictory to his testimony in chief. No formal foundation for impeachment is necessary, if such a question tends directly to impeach the witness if answered in the affirmative. ■■■ The mode and extent of cross-examination of a witness as to his statements on a former occasion rests in the sound discretion of the trial court. Reasonable scope and latitude should be allowed. ■■■ For example, in testing the credibility of a witness by inquiring as to previous inconsistent written statements, the writings themselves need not be produced, although the cross-examiner may frame his questions from them; nor need the writings be introduced in evidence. ■■■ The written instrument may be used for the purpose of framing a question to test the witness' credibility. ■■■ It was competent for defendant's counsel, as here, to repeat the statement in the writing and to inquire of the witness if he made it. 98 C. J. S., Witnesses, Secs. 596, 597.

■■■ Appellant complains of the granting of the following instruction to defendant: ''The Court instructs the jury for the Defendant that if you believe from the evidence that the Defendant did not stop on the bridge until after the collision occurred, then it is your sworn duty to find for the Defendant.''

This instruction was. error. The question is whether it requires the case to be reversed. Plaintiff was grant-

ed ten instructions covering all of the issues and her theories of the case, based principally on the claim that Sills suddenly and without warning brought the tractor-trailer to "a stop, or near stop" on the bridge without exercising due care for the plaintiff and other persons using the highway. No. 6 advised the jury that it was unlawful to stop a vehicle upon a bridge except when necessary, and, if it believed defendant negligently stopped his truck on the bridge when it was not necessary, this was negligence, and, if it further believed that such negligence was a direct and proximate cause of the accident, then it should find for plaintiff. Defendant was granted eleven instructions setting forth his theories of the case, emphasizing that if the jury believed the truck was proceeding south, the Alexander car suddenly pulled out into plaintiff's lane of traffic, and such act was the sole proximate cause of the collision, then it should find for defendant.

The quoted instruction, standing alone, excludes plaintiff's alternative theories that the truck slowed down suddenly rather than stopped, and that this was negligence which proximately caused the collision; and that the stop lights on the trailer were not working. However, plaintiff's instructions amply covered these circumstances. His No. 6 was confined to whether the truck had suddenly stopped. Considering all instructions as an entirety, we think the jury was adequately directed on the law, and that defendant's instruction No. 10 is not reversible error. The jury could not have been misled materially by it. Conflicting evidence posed the issues of whether Sills came to a sudden stop or near stop without signalling, before the collision occurred, or whether the sole proximate cause of the accident was Alexander's negligence. Booth v. Teche Lines, Inc., 165 Miss. 343, 352-353, 143 So. 418 (1932), relied upon by appellant, does not affect our conclusion here. Different issues and circumstances are involved here.

247

Moreover, Rule 11 of this Court states: "No judgment shall be reversed on the ground of mis-direction to the jury . . ., unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." That contingency does not exist here, when all of the instructions are considered together, along with the conflicting evidence.

Affirmed.

*McGehee, C. J.,* and *Kyle, Gillespie,* and *Jones, JJ.,* concur.